(No. 30662.—

CORA H. WELSH *et al.,* Appellants, *vs.* PETER JAKSTAS *et al.,* Appellees.

*Opinion filed September 24, 1948—Rehearing denied Nov. 18, 1948.*

John C. Gekas, of Chicago, for appellants.

Runyard & Behanna, (William R. Behanna, and Fred B. Meyer, of counsel,) all of Waukegan, for appellees.

Mr. Justice Thompson delivered the opinion of the court:

Appellants, Cora H. Welsh, Kathryn Davlin and Maud Gussenhoven, as plaintiffs, filed a suit in the circuit court of Lake County against Peter Jakstas and Emily Jakstas, his wife, in a forcible detainer suit. The appellants were successors in title to property belonging to the Mineola Hotel and Land Company, a corporation, which was dissolved and which had leased the premises to the defendants. Peter and Emily Jakstas, appellees, filed suit in the same court to enforce the specific performance of an alleged contract for sale of the real estate arising out of the option agreement contained in the lease of the premises, and, as auxiliary to this relief, prayed to enjoin appellants from the prosecution of the forcible detainer suit. In the chancery case, appellants filed a counterclaim alleging that the lease and option and appellees' claim thereunder were invalid and a cloud upon appellants' title to the real estate involved. The two causes were consolidated and after a hearing before the chancellor, the issues in both cases were found in favor of appellees and a decree entered dismissing appellants' counterclaim for want of equity and granting appellees' prayer for specific performance.

The lease was given by the hotel company to the appellees for a term of three years beginning October 1, 1943. The property leased was the Mineola Hotel located in the village of Fox Lake in Lake County. The lease contained the following provisions:

"In consideration of the covenants and promises herein made and other good and valuable consideration, the receipt whereof is hereby acknowledged, the Lessor does hereby give to the Lessees the option to purchase at the price of Thirty-seven Thousand Five Hundred Dollars ($37,500.00) the said hotel property, together with other property, described on the plat hereto attached and made a part hereof as Exhibit "A," said option to be exercised by Lessees at any time during the term of this lease upon thirty (30) days' notice in writing given to Lessor by Lessees.

It is further understood and agreed that in case Lessees shall exercise said option during the first eighteen (18) months of said lease, then all rents paid shall be credited on said purchase price of $37,500.00 and there shall be no additions made to said purchase price by the Lessor, but in case said option is exercised after eighteen (18) months of said lease has expired, then Lessees shall receive credit for all rents paid but Lessor shall add to said purchase price of $37,500.00 all sums of money paid for taxes and insurance premiums accruing during the second eighteen months term of this lease, it being understood and agreed that at the time of any sale of said property to the Lessees all taxes and insurance premiums shall be prorated as of the time of the date of sale, except as provided herein.

Upon the exercise of the option to purchase by Lessees, Lessees shall immediately pay to Lessor Twelve Thousand Dollars ($12,000.00) in cash, less such credits as are due Lessees by reason of rent paid, and the balance of said purchase price shall be paid at the rate of Twenty-Five Hundred Dollars ($2,500.00) per year, including interest on the total sum remaining from time to time unpaid at the rate of four per cent (4%) per annum, but it is agreed and understood that Lessees shall have the privilege of paying not to exceed Six Thousand Dollars ($6,000.00) in any one year, including interest.

It is further understood and agreed that upon the exercise of said option of purchase that Lessor and Lessees, or their assignees, shall enter into a separate real estate contract containing the foregoing provisions, said contract also to provide that Lessees shall receive a deed to said premises when $20,000 has been paid and shall give a mortgage back to Lessor for the balance, which mortgage shall be payable at the rate of Twenty-five Hundred Dollars ($2,500.00) or more a year, including interest at four per cent (4%) per annum." * * *

"It is further understood and agreed that the purchase price of $37,500.00 shall include all equipment and furnishings now in said hotel and tavern or any replacements thereof made by Lessees.

"It is further understood and agreed that the Lessor owns the property immediately adjoining said hotel premises to the south and that the Lessees shall have the right of using the roadway

leading to the south portion of said premises at this time and shall also have the right to use said roadway in case of the exercise of said option to purchase, it being understood and agreed that in the event that said roadway leading to the south side of said premises is hereafter closed by Lessor, then Lessor shall provide another roadway as a means of ingress and egress to the south side of said hotel premises."

August 6, 1946, appellees, through their attorney, Max Przyborski, notified appellants by mail that they had decided to exercise their option and were ready to make the initial payment, and requested appellants to take the matter up with their attorney and have him prepare the contract of purchase in accordance with the option and submit the same for examination. Within a week or two after the notice was given, the appellant Cora H. Welsh called Emily Jakstas on the telephone and advised her the notice to exercise the option had been received, that they were busy then, but after Labor Day they would get together and close the deal. A few days after this conversation these parties met in front of the hotel and again discussed the closing of the deal after Labor Day, and at this time Mrs. Welsh stated, "You are busy now before Labor Day and so are we."

On August 22, an attorney for appellants wrote appellees' attorney advising him that he would have a contract ready for his examination in the very near future and on September 18, the attorney forwarded the contract he had prepared to appellees' attorney, from which the description of the property was omitted for the reason that the survey then being made to obtain the proper legal description for incorporation in the final draft of the contract was not completed. Later a map was prepared by a civil engineer which further gave a legal description of a roadway with improvements.

On October 24, the parties met in the office of the attorney for appellees. Jakstas brought with him to this meeting a certified check for $6500, which was the amount

of the initial payment of $12,000, after deducting therefrom certain rents paid during the terms of the lease. He was also prepared to write checks for the amount of prorations for taxes and insurance premiums which, under the terms of the option, he was required to pay. The amount, however, of these prorations had not been furnished him by the appellant and the checks were not certified.

The parties at this meeting discussed the legal description of the property. Appellees insisted that the contract contain the legal description of the roadway. Appellants at first objected but finally consented that the description might be inserted. Another meeting was arranged at which all parties were present, after new drafts of a contract had been rewritten by the attorney, and a controversy arose as to the cost of the survey. Considerable testimony was taken by the chancellor as to this controversy.

Appellants contend that specific performance of the option agreement cannot be decreed for the reason the complaint does not state a cause of action; that the option is indefinite, uncertain and ambiguous, that although the parties may have intended to have entered into a written contract of sale and orally agreed to all the terms and provisions which were to be incorporated therein, they are not bound thereby because the same were not reduced to writing and signed by the parties. Further, that the option and its alleged acceptance amounted to a contract for a contract, the terms of which were to be agreed upon by future negotiations; that the appellees did not exercise and accept the option in accordance with its terms and did not perform or tender performance as required by the option; that there is a lack of mutuality and appellants have done nothing to waive any of their rights or to estop them from insisting that appellees are not entitled to have said option agreement specifically enforced.

It is first contended by appellants that the complaint does not set out appellees' written acceptance of the option,

neither does it have a copy thereof attached to the complaint as an exhibit. A motion to strike the complaint in this respect was denied. We think the court should have required the appellees to amend their complaint by either setting out therein the written acceptance or attaching a copy as an exhibit. (*Morris* v. *Goldthorp*, 390 Ill. 186.) The complaint does, however, set forth in general the substance of the written acceptance and a copy of the same was introduced in evidence. It is apparent from the record in this case that appellants were not injuriously affected or in any way prejudiced by the fact that the complaint did not set out *in haec verba* the written notice of acceptance. It is not contended that the appellants were not fully aware, at the time the complaint was filed, of the contents of the written notice and of the manner in which and to whom and where such notice was given. The rule is that to authorize a reversal of a decree it must not only appear that an error intervened, but the record must contain enough to raise and justify the inference that the error was prejudicial, or probably prejudicial, to the party who asks reversal. *Bettis* v. *Green*, 171 Ill. 495.

Appellants contend that the option is too indefinite, uncertain and ambiguous in its terms to entitle appellees to specific performance, and it is pointed out the option does not provide who is to draw the contract, and that it is indefinite as to the proration of taxes and insurance premiums. It is not necessary for the contract to state specifically all details in regard to the matter concerning which the parties are contracting. A contract for the sale of real estate is sufficiently definite to be specifically enforced even though it does not state whether the property is to be conveyed by a warranty or quitclaim deed, nor is it necessary that the contract provide for every collateral matter or every possible future contingency which might arise in regard to the transaction. The law enters into and forms a part of every contract, and a contract is suffi-

ciently certain and definite to be enforcible if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do. We are of the opinion the plain common-sense meaning of the option should prevail. It contains a description of the property sufficient to identify it, and states the price, terms and conditions of the sale. Appellants argue, because the contract provided for the prorating of certain taxes and insurance premiums, appellees are not entitled to specific performance. We held in *Neidhart* v. *Frank*, 325 Ill. 596, that specific performance was proper of a contract for the sale of real estate which provided for the prorating of certain taxes and insurance premiums. Under the decree in that case, as in the decree here, the vendor could have the amount of such prorations ascertained by the court and it was held that this protected the vendor's rights and was proper.

It is contended by appellants that no sufficient description of the roadway is contained in the option and the case of *Fowler* v. *Fowler*, 204 Ill. 82, is cited. We agree with what is there said, however, in that case the contract between the vendor and his daughter, who was the vendee, consisted of correspondence between the father and the daughter's attorney and in that case it was held that it was apparent from the letters that the description of the property could be made certain and the contract would not be regarded as void for uncertainty. Equity, in suits for specific performance, applies the maxim "that is certain which may be made certain." (*Koch* v. *Streuter*, 218 Ill. 546.) It is observed the roadway is not shown on the map attached to the lease, but it is described in the lease as the roadway leading to the south side of the hotel premises. This furnishes the means or key whereby the roadway described in the lease may be found and identified with its location on the ground. The evidence discloses

that a surveyor was enabled to and did, from the description of the roadway in the lease, in conjunction with the actual examination of the premises, ascertain the location of said roadway, and that the legal description of the roadway contained in the complaint and decree is that of the roadway described in the lease.

A written contract for the conveyance of land is not void for uncertainty in the description of the land sold, if, from the words employed, the description can be made certain by extrinsic evidence of facts, physical conditions, measurements or monuments referred to therein. (*Koch* v. *Streuter*, 218 Ill. 546; *Fowler* v. *Fowler*, 204 Ill. 82; *Hayes* v. *O'Brien*, 149 Ill. 403.) The contract must either describe the land to be conveyed with such certainty that from the writing itself a deed can be drawn conveying the property intended, or it must furnish the means of identifying it with such certainty that from it a surveyor, by the aid of extrinsic evidence, can locate the property. (*Daytona Gables Development Co.* v. *Glen Flora Investment Co.* 345 Ill. 371.) In the instant case the description contained in the lease furnished the means of identifying the roadway. No other description was necessary in order to enable the surveyor to find and, by actual measurement, ascertain the length, width and the location of the roadway and the correct legal description thereof. The extrinsic facts and circumstances of the survey and the parol evidence of the surveyor were required only for the purpose of applying the description contained in the lease and option and thereby locating the roadway, which was the subject matter of the contract.

It is urged by appellants that subsequent and additional agreements and undertakings had been discussed and agreed to, but as they were not reduced to writing and signed, the parties were not bound. We quite agree that appellants are not bound by, and cannot be required to perform said subsequent and additional agreements and undertakings.

The decree, however, does not require them to do so and there is no basis for appellants' contention that it does.

It is contended by appellants that a contract for a contract, the terms of which are to be settled by future negotiations, is too indefinite and uncertain to be specifically enforced. There is no question as to the correctness of this rule, but it has no application here. The option and its acceptance did not result in a contract under which the parties were bound to negotiate and agree upon the terms of another contract, to be entered into between them when the terms thereof had been thus ascertained and determined. The option, when accepted, resulted in a present contract for the sale of real estate. The provisions of the option agreement then constituted the contract of sale and stated in clear and unambiguous language, the price, terms and conditions of the sale. A contract is not rendered void because the parties thereto contract or agree to contract concerning additional matters. There is nothing in the option which prevents the parties from entering into additional covenants and agreements concerning the details of the sale or matters incidental to the sale, or from incorporating such additional covenants and agreements into the written contract.

It is contended that the appellees did not exercise and accept the option in accordance with its terms and did not perform or tender performance as required by the option. The notice of August 6, 1946, given by attorney for appellees was in the form of a letter to appellants and was sent· by registered mail addressed to the three of them at Fox Lake, where the appellants, who are sisters, were living in a cottage near the hotel. We have examined the record pertaining to the notice and from the facts and circumstances appearing in evidence, the written notice required by the option was properly given to the appellants.

It is further argued that under the provisions of the option it was necessary, in order for the option to be con-

verted into a contract of sale, that the initial installment of the purchase price be paid or tendered at the moment of the exercise of the option and that this is the meaning of the word "immediately" as used in the clause of the option providing that "upon the exercise of the option to purchase by the lessees, lessees shall immediately pay," etc. With this contention we are unable to agree. There is nothing in the option which requires the payment of any money to be made or tendered when the option right is exercised in order to constitute an acceptance. The parties to an option may or may not make payment an essential condition to the exercise and acceptance of the option. Acceptance in writing was the only thing necessary. The initial installment of the purchase price was then to be made immediately, but such payment was a matter pertaining to the performance of the contract and not to its creation. The evidence in this case discloses that at all times, on and after August 6, 1946, appellees were ready, able, willing and offering to make the payments required by the option and otherwise perform the terms of said agreement and that appellants were fully cognizant thereof. A provision in a written contract for the sale of real estate as to the time for payment of the purchase price may be waived by the vendor, and proof of such waiver may consist of acts *in pais.* (*Kissack* v. *Bourke,* 224 Ill. 352.) Any party to a contract has a right to waive a strict compliance and rights arising under sealed instruments may be waived by parol. (*Zempel* v. *Hughes,* 235 Ill. 424.) The rule is that a vendor may, by his conduct, waive his right to declare forfeiture of a contract of which time is the essence. (*Forest Preserve Real Estate Improvement Corp.* v. *Miller,* 379 Ill. 375.) The waiver of a covenant by the party for whose benefit it is inserted into a written instrument may be made by parol, and such waiver is held not to be a modification or change in the terms of the original

agreement. (*Fuchs* v. *Peterson,* 315 Ill. 370.) The provision of the contract relating to immediate payment was one which appellants could waive, and which, as clearly shown by their acts and conduct appearing in evidence, they did waive. In actions for specific performance in equity, the technical rules governing tender in actions at law are not applicable, and it is sufficient if the purchaser is ready and offers to pay any sums that may be due and unpaid under the contract. *Regan* v. *Berent,* 392 Ill. 376.

Another claim made by appellants is that the text of the written acceptance is not in accord with the terms of the option and that it includes and opposes new and additional requirements, which they enumerate. These objections are highly technical in the extreme and, in our judgment, without merit. As we have heretofore pointed out, the letter of August 6 was an unequivocal and unconditional acceptance of the offer substantially as the same was made in the option, and the appellants, at the time it was given, recognized and accepted it as such.

It is urged by appellants that there is a lack of mutuality for the reason the written acceptance was not signed by appellees or by any one whom they had authorized in writing to sign for them in accordance with the Statute of Frauds. The rule is well settled that a contract will not be enforced unless it is mutually. enforcible and binding upon both parties. (*Barker* v. *Hauberg,* 325 Ill. 538.) It is also a well settled rule that, as to contracts generally, a party named in the contract may become bound by its provisions even though he has not signed it. (*Soelzer* v. *Soelzer,* 382 Ill. 393.) In *Forthman* v. *Deters,* 206 Ill. 159, a contract for the sale of real estate, signed only by the vendor, was held mutually enforcible, the court there saying that where a party accepts and adopts a written contract, even though it is not signed by him, he shall be deemed to have assented to its terms and conditions and to be bound

by them. This was a specific performance case although no question of the Statute of Frauds was raised. In the instant case appellants plead and rely on section 2 of the Statute of Frauds and the fact that the attorney, Przyborski, who wrote the letter of August 6, 1946, on behalf of appellees, had no written authority to represent them or to exercise the option for them.. It is conceded by appellees that the only authority he had was verbal.

Appellants rely on the case of *Cowan* v. *Curran,* 216 Ill. 598, on the proposition that a contract for the sale of real estate will not be enforced if the same is not signed by the purchaser or by someone who has written authority to execute the contract for him. We have examined this case and find that the facts there are entirely different from the facts and circumstances in the instant case, and are of the opinion that the facts in the case of *Fuchs* v. *Peterson,* 315 Ill. 370, are more comparable. There a similar contention to that which appellants make here was unsuccessfully urged. In that case Fuchs had leased certain real estate to Peterson for a term of five years, with a provision giving the lessee the option for a new lease for another five years if a registered-letter notice was given within a certain length of time to that effect. The lessee, within the time specified, notified the lessor verbally of his intention to exercise the option for a new lease, and such verbal notification was accepted as sufficient, the lessor telling him that he need give no further notice. Thereafter and subsequent to the expiration of the term of the original lease, the lessor brought suit against the lessee for possession of the premises. The lessee defended on the ground that he was entitled to retain possession and to a new lease by virtue of his exercise of the option. In opposition it was argued that the lessor's waiver of written notice and his acceptance of verbal notice in lieu thereof could not entitle the lessee to a new lease for five years or any right to claim such tenancy, because, if it were otherwise, the

effect of such waiver would be to create a lease which was in violation of the Statute of Frauds. This contention of the lessor was not sustained.

In *Northern Illinois Coal Corp.* v. *Cryder*, 361 Ill. 274, this court, in refusing to sustain the objection that there had been no proper service of notice upon the optionors, called attention to the fact that the notice was not required by the option to be in writing. In that case, the subject matter of the option was a farm and the Statute of Frauds was urged as a defense against the enforcement of the contract.

In the instant case the evidence discloses the notice exercising the option was given in writing signed by the attorney for the appellees, and appellants, upon receipt of same, at once employed an attorney to draft a proposed sales contract in accordance with the provisions of the option contract and as requested in the notice of acceptance given by appellees' attorney. A number of meetings thereafter were held by the parties and their respective attorneys in an endeavor to draft a proper sales contract, all of which shows appellants regarded such notice as a sufficient acceptance of the terms of the option and acted accordingly. Under the above cases, and the facts as disclosed by the record here, the notice as given and accepted was sufficient.

As to the final contention, it is claimed the appellants never intended to waive any of their rights and that they did nothing indicating waiver or which the court could or should construe as amounting to an intentional waiver of their rights. In view of what we have said in disposing of the other contentions of appellants, it is not necessary to further consider the last proposition contended and argued by appellants in their brief.

For the reasons above pointed out, the decree of the circuit court of Lake County is affirmed.

*Decree affirmed.*