R. J. LANNON, JR., Plaintiff-Appellant, *v.* MATILDA LAMPS *et al.*, Defendants-Appellees.

Third District   No. 76-477

Opinion filed October 11, 1977.

146

R. J. Lannon, Jr., of Herbolsheimer, Lannon & Henson, P. C. of La Salle, *pro se*, and Anthony C. Raccuglia, of Peru, for appellant.

James J. Duncan, of Peru, for appellees Matilda Lamps and Albert Tomaszewski.

Jenner & Block, of Chicago, for other appellees.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

This action for specific performance of an option to lease real estate was dismissed at the close of plaintiff's case for want of equity, and plaintiff appeals.

According to the record, the facts are not in dispute. In 1964 plaintiff R. J. Lannon, Jr., an attorney, and Don Wilmot paid $10 to August and Edward Toedter for a one-year option to lease seven acres of farm land for a term of 99 years. The Toedter farm was situated at the southwest corner of the intersection of Interstate 80 and Illinois Route 51, and plaintiff said he wanted the land for purposes of constructing a motel at that location. This option provided for a rental of $200 per acre per year.

In August of 1965, plaintiff prepared a five-year option to lease 24 acres of land located immediately south of the seven-acre parcel, and gave it to Don Wilmot. Wilmot gave it to his wife Lois, who had known the Toedter brothers for many years, and instructed her to get the Toedters to sign the option because the original option to the seven acres was about to expire. According to Mrs. Wilmot, he also told her that more acreage was needed for a longer time in order to provide a roadway for access to the seven-acre parcel.

The Toedters were elderly bachelor brothers who lived alone in a primitive farm home. Mrs. Wilmot told them that the previous option had expired, and she asked August if he would sign "for more acreage and for a longer period of time" to provide access to the property. August Toedter said he knew the original option expired that week, and he was expecting someone to come. He also said he knew they would need more land for a roadway because some people had given up a previous option for lack of access. August then studied the option for a considerable time. He asked no questions, but after reading the document, he signed it and gave it to Edward to sign. Mrs. Wilmot gave August her personal check for $10 and returned the executed option to her husband. He gave it to plaintiff who had it recorded. The check for $10 was never cashed.

Under the terms of the second option, for $10 consideration the Toedters gave plaintiff and Wilmot a five-year option for a 99-year lease of 24 acres at $200 per acre per year, payable semi-annually. The option provided that the lease would be "under a written agreement," and contained no provision for taxes. The option would expire at 12 p.m. on

August 1, 1970. The final paragraph provided that the option could be exercised by posting at any United States mailbox a letter addressed to either August or Edward Toedter, Peru Township, Peru, Illinois, indicating that Wilmot and plaintiff were exercising that option.

Plaintiff personally typed a letter exercising the option. He testified that he signed the letter and also obtained Wilmot's signature to the letter which he then placed in the outside maildrop of the Peru post office at 8:30 p.m. on August 1, 1970. Enclosed with the letter was plaintiff's personal check for $2,400, representing six months rent in advance as required by the option. On cross-examination plaintiff identified an envelope postmarked August 2, 1970, as the one he used to mail the letter.

According to plaintiff's testimony, Wilmot negotiated the 24-acre option. The additional land was not in fact essential for construction of a motel but instead was regarded by plaintiff as a speculative venture. Plaintiff hoped the land would increase in value since, as farm land, it would not make $200 an acre for a tenant. Plaintiff had met the Toedter brothers earlier when the seven-acre option proposal was discussed, and he considered August to be "a very shrewd man" who was intelligent and who expressed himself well. Edward never said much, and merely followed August's lead.

Both August and Edward died prior to August 1, 1970. The heirs of the Toedter brothers refused to recognize the validity of plaintiff's exercise of the option, and returned plaintiff's check. Wilmot assigned his interest to plaintiff, and plaintiff filed an action against the Toedter heirs to compel specific performance of the contract for the 99-year lease. Defendants filed a motion to strike the complaint for numerous reasons, including that the alleged agreement was ambiguous and uncertain, and that it was inequitable and unconscionable. The motion was denied, and defendants subsequently filed assorted affirmative defenses which included as grounds that the agreement was ambiguous and inequitable.

At the hearing before the chancellor, Lois Wilmot and plaintiff testified to the facts indicated above, and plaintiff rested. Then the court granted defendants' motion for judgment and entered an order which stated that "this cause is dismissed for lack and want of equity, with prejudice." Plaintiff appeals, contending that he established a *prima facie* case and that defendants, having pleaded the want of equity as an affirmative defense, now have the burden of proving it.

■■ According to the Illinois authorities, specific performance will be decreed only if it is clearly established that the contract is just, reasonable, and free from misapprehension or misrepresentation. (*E.g., Favata v. Mercer* (1951), 409 Ill. 271, 99 N.E.2d 116; *Carver v. VanArsdale* (1924), 312 Ill. 220, 143 N.E. 579.) Accordingly, plaintiff had the burden of introducing *prima facie* evidence of the fairness and reasonableness of the

option agreement as well as *prima facie* evidence of the other essential elements of his cause of action.

■■ A decree dismissing the complaint for want of equity is regarded on appeal as tantamount to finding that plaintiff failed to prove the essential allegations of the complaint. (*Daven v. Downey* (1941), 378 Ill. 543, 39 N.E.2d 45). Where an appeal has been taken from a dismissal of a complaint for insufficient proof, the reviewing court must consider the evidence, together with all reasonable inferences therefrom, in the light most favorable to plaintiff. *Banks. v. Gregory* (1959), 16 Ill. 2d 227, 157 N.E.2d 12; *Faulkner v. Black* (1941), 378 Ill. 112, 37 N.E.2d 796.

■■ Applying these principles to the case at bar, we believe it reasonable to infer that August Toedter could read and understand the fairly simple two-page option agreement which he executed on August 7, 1965. Although Lois Wilmot apparently misstated the purpose for which the land was to be acquired, she quite clearly alerted both Toedter brothers to the fact that this option was for more land and for a longer period of time than the previous option. There is no evidence in the record that $200 per acre annual rent was unreasonable for the land in question at the time, and in fact, plaintiff's testimony would indicate that the price was fair. There is nothing to show that the Toedters failed to understand what they were signing, and construing Mrs. Wilmot's testimony most favorably to plaintiff, it can be inferred that they fully understood the terms of the option.

■■ Defendants contend that plaintiff's evidence casts sufficient doubt on the fundamental fairness of the option and the method by which it was obtained to support the trial court's ruling. Admittedly the evidence is capable of being so interpreted; however, at this stage of the proceeding, a court should not weigh the evidence but rather must give plaintiff the benefit of any doubt. Using that standard, we find that plaintiff met his burden. As the supreme court said in *In re Estate of Frayser* (1948), 401 Ill. 364, 371-72, 82 N.E.2d 633, 637-38:

> "The courts can have no concern with the wisdom or folly of a contract, made for a consideration and without fraud, where the parties are competent to contract and enter into same fairly and understandingly. * * * The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear. [Citation.] The mere fact the value of the property has increased or diminished since the contract was executed ordinarily will not warrant a refusal to carry out its terms, in the absence of circumstances indicating fraud or bad faith."

Defendants also argue that the trial court properly dismissed the complaint because the terms of option were not clear, certain, and unambiguous. We do not agree.

■■ The rule in Illinois recognizes the following four points of agreement which must be definite in order to create a valid contract of lease: (1) the extent and bounds of the property; (2) the term of the lease; (3) the amount of the rent; and (4) the time and manner of payment. (*Miller v. Gordon* (1921), 296 Ill. 346, 129 N.E. 809; *Bournique v. Williams* (1st Dist. 1922), 225 Ill. App. 12.) The option agreement here contained a precise legal description of the 24-acre tract and also provided for a definite term, the amount of the annual rent, and the time of payment. Furthermore, the option was quite specific as to the manner in which it was to be exercised. In *Miller v. Gordon*, 296 Ill. 346, 350, 129 N.E. 809, our supreme court said:

> "Many other agreements and conditions might be incorporated in a lease, and usually are, but they are not essential to a complete and binding lease."

In support of their position defendants contend that plaintiff failed to furnish a written lease so that the terms of the lease are uncertain, that the contract is unfair because no provision was made for payment of taxes by the lessee, and that a provision for disposition of growing crops is ambiguous.

■■ The option agreement provided in part that the Toedters agreed "to lease under a written agreement all of said real estate, or any portion thereof" in the event Wilmot and plaintiff exercised the option. A similar provision was contained in the option in *Bournique v. Williams* where the court held that the fact a written lease was contemplated by the parties does not relieve either party from the responsibility of the contract which was already expressed in writing. The supreme court in *Welsh v. Jakstas* (1948), 401 Ill. 288, 297, 82 N.E.2d 53, 59, stated:

> "A contract is not rendered void because the parties thereto contract or agree to contract concerning additional matters."

Hence, we believe the absence of a written lease does not render the option contract unenforcible.

■■ Defendants also state that the absence of any provision for payment of real estate taxes by the lessee could be grossly inequitable in the event plaintiff erected a valuable improvement resulting in defendants' tax liability greater than the rents received. This argument overlooks the rule of law followed in *Bournique v. Williams* that where there is no covenant by the lessee to pay taxes, the amount of taxes levied on account of improvements placed on the land by the lessee are chargeable to him. *Bournique v. Williams* involved an option to lease a vacant lot for 99 years, and thus, like the case at bar, would on its facts

come within the generally accepted principle stated in Annot., 86 A.L.R.2d 670, §2 (1962), as follows:

"On the basis, doubtless, that one should not be taxed for what he neither owns nor will benefit by, the lessee has been held to bear the burden of increased taxes resulting from his improvements * * * which, by reason of the term of the lease and the nature of the improvements, will be of little or no benefit to the lessor."

We also note that plaintiff admits his liability for taxes on the value of any improvements which he may erect and thus we conclude that payment of taxes is no longer an issue.

■■ Finally defendants argue that the following paragraph in the option is uncertain and unenforcible:

"It is understood by the parties hereto that, if a crop is growing on the property at the time of the exercise of the Option, that the Optionees shall have the choice to either let the Optionors harvest the crop, or to pay to the Optionors the value of the crop, if harvested."

Defendants suggest that such an alternative provision is unenforcible, that no date for the optionees to make an election was provided, and that no method of valuation was agreed. As noted earlier, this provision is not an essential element of the contract of lease, and just as the absence of a written lease will not defeat an action for specific performance, neither will this paragraph which requires a future agreement as to growing crops. In *Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53, the court observed that in suits for specific performance, equity applies the maxim *id certum est quod certum reddi potest* (that is certain which could be made certain). Applying that maxim to the case before us, we hold that the provision for growing crops does not defeat the performance of the option agreement.

For the reasons given, we reverse the decree of the Circuit Court of La Salle County and remand this cause for further proceedings.

Reversed and remanded.

ALLOY and STOUDER, JJ., concur.