R. J. LANNON, JR., Plaintiff-Appellant, *v.* MATILDA LAMPS *et al.*, Defendants-Appellees.

Third District   No. 79-36

Opinion filed January 17, 1980.

Anthony C. Raccuglia & Associates, of Peru (James A. McPhedran, of counsel), for appellant.

James J. Duncan, of Peru, for appellees Matilda Lamps and Albert Tomaszewski.

Nicholas D. Chabraja and Thomas R. Mulroy, Jr., both of Jenner & Block, of Chicago, for appellees Lois Weise McCulloch, Clara Weise Tomaszewski, Carl Rohs, Jr., and Loretta Rohs Wolf.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiff R. J. Lannon, Jr., appeals from a judgment of the Circuit Court of La Salle County denying him specific performance of an option to lease real estate from defendants. The option to lease had been executed by August and Edward Toedter in favor of Don Wilmot and R. J. Lannon, Jr. Lannon had exercised the option in 1970, after the death of both Toedter brothers. Later, Wilmot assigned his rights under the option to Lannon. The defendants, as heirs of the brothers and successors in interest in the real estate, refused to lease the land covered by the option to Lannon, on the basis of the terms of the option agreement. Lannon then brought the instant suit for specific performance of the option agreement.

After Lannon had presented his case, the defendants moved to dismiss the action for failure to state a *prima facie* case. The trial court ruled in defendants' favor and dismissed the suit for lack and want of

equity. Plaintiff Lannon appealed and this court reversed, finding that while the evidence was capable of differing interpretations, the court erred in weighing the evidence at the directed verdict. (*Lannon v. Lamps* (1977), 53 Ill. App. 3d 145, 368 N.E.2d 196.) We remanded. Upon remand, further hearings were held at the conclusion of which the court found for defendants and entered judgment in their favor, dismissing the suit. The circuit court found that the plaintiff Lannon had failed to show that the option agreement had been entered into fairly and understandingly. It found that enforcement of the option, via specific performance, would work an unconscionable result. Plaintiff Lannon appeals from that decision, arguing that the option was not unconscionable, that there was no misrepresentation, and that the option was freely and understandably entered into by the Toedter brothers. Lannon also raises issues with respect to various evidentiary rulings by the court and with respect to the propriety of the same judge who entered the earlier dismissal motion continuing to sit as judge upon remandment.

The record discloses that during the pertinent period of time involved in this litigation, being 1964-1965, August and Edward Toedter were elderly men. Edward was born in 1880 and August in 1884. The brothers owned 160 acres of land located south of Interstate 80 and west of Highway 51 in Peru, Illinois. They had been born on the land and had resided there all their lives. The house in which they resided in 1964 and 1965 had no running water, no electricity, no central heat, and no indoor plumbing. They seemed to prefer the simple life into which they had been born and trusted to the old ways, albeit primitive from our more "modern" perspective. Neither of the brothers drove an auto during this time, and relatives and friends would do grocery shopping for them and take care of other necessities such as coal, corn cobs and ash removal. The Toedter brothers had stopped farming their property in 1950 and thereafter leased it to a tenant.

Dr. G. W. Toraason, of Peru, Illinois, began treating the brothers in 1964 when both became acutely ill. Both men needed operations to remove tumors of the colon and one had a bladder tumor as well. With regard to their mental states, Dr. Toraason testified that during the period 1964-1965 both suffered from deteriorating mental conditions, the elder, Edward, more seriously than August. Dr. Toraason testified that during this time both suffered from senile dementia, a deterioration of the mental processes through cerebral arteriosclerosis. It was Toraason's opinion of their mental competence that both were below the norm for men of their age, octogenarians.

In the summer of 1964, Don Wilmot, a pharmacist and drug store owner in La Salle, Illinois, became interested in acquiring some of the

Toedter property for a motel he was planning to build. Wilmot, having been introduced to the Toedters through a mutual friend, attempted to persuade them to option to him a portion of their land. They refused. Wilmot then went to a relative of theirs, Albert Tomaszewski, and asked him to persuade the elderly men to sign the option agreement. Tomaszewski refused to help Wilmot. At that time Wilmot went to attorney R. J. Lannon, Jr., plaintiff in this case, to get help. Lannon and Wilmot then became partners in the land venture that Wilmot desired to develop.

Wilmot took Lannon to the Toedters' farm in the summer of 1964 and introduced him to the brothers. Lannon persuaded them to agree to a 1-year option for a 99-year lease of 7 acres in return for $10. Lannon later prepared the document and gave it to Wilmot to get the Toedters' signatures. Wilmot brought it to them and they signed that option agreement on November 24, 1964. This first option between the Toedters and Lannon and Wilmot expired and is not at issue in the instant case.

The option at issue is one executed between those same parties in 1965. Sometime in the early part of that year, Wilmot and Lannon desired to obtain an option for additional acreage belonging to the Toedters. Testimony at trial indicated that the men had no specific plans for the additional property they wanted to obtain an option on, but they felt it would be a good speculative investment. Lannon prepared this 1965 option agreement, which provided Lannon and Wilmot with a 5-year option for a 99-year lease on an additional 24 acres of the Toedters' land. Consideration for the option was to be $10, and the stated rental price of the lease was to be $200 per acre annually. Wilmot discussed the option with the Toedters and explained to them that he and Lannon wanted an additional 17 acres, along with the original 7 optioned for the motel and access. The option prepared by Lannon was for 24 acres, but it did not cover the original 7 acres optioned in 1964. Wilmot then gave the option agreement to his wife and she went to the brothers' farm to obtain their signatures. Lois Wilmot presented the option agreement to August Toedter for him to look over. She told him that the option was for a larger parcel than before and for a longer period of time. According to her testimony, August Toedter looked at the two-page document for about 2 hours, in silence. At the end of that time, he signed the agreement and told his brother to sign as well. They were given a $10 check as consideration for optioning 24 acres of their property for 5 years, with stated 99-year leases for $200 per acre if the option were to be exercised. The signed option agreement was then returned to Don Wilmot by his wife and Wilmot later took it to a notary who notarized it.

In February 1966, some 6 months after executing the option, Edward

Toedter was placed in a nursing home and died shortly thereafter. August Toedter died in September 1969.

Plaintiff Lannon mailed his letter exercising the option on August 1, 1970, the last possible day to do so. Two days later, Don Wilmot assigned his interest in the option agreement to Lannon.

Subsequent thereto, the heirs and representatives of the heirs refused to execute a lease as per the terms of the 1965 option. Lannon then brought suit in circuit court seeking specific performance of the option agreement. After presentation of plaintiff's case, the defendant moved to dismiss the complaint for failure to state a *prima facie* case. The trial court granted the motion and dismissed the case for lack and want of equity. Lannon then appealed to this court, and we reversed the dismissal. (*Lannon v. Lamps* (1977), 53 Ill. App. 3d 145, 368 N.E.2d 196.) We noted that while the evidence was capable of being interpreted so as to cast doubt upon the fairness of the option and the methods by which it was obtained, the trial court, addressing the motion for directed verdict, should not have weighed the evidence. It should have given plaintiff the benefit of any doubt at that stage. (53 Ill. App. 3d 145, 149.) We found that the plaintiff Lannon had stated a *prima facie* case so as to withstand the motion for directed verdict by defendants, and we remanded to the circuit court for further proceedings. Upon remandment, the case was heard by the same judge who had heard the case previously. A further hearing on the merits was held and the court entered judgment for defendants.

From that judgment the plaintiff Lannon again appeals, and he raises five issues. (1) Whether the court erred in considering incompetent evidence on the question of the Toedter brothers' mental capacities. (2) Whether the court erred in finding the agreement unconscionable where it was fair on its face and recited adequate consideration. (3) Whether there was any misrepresentation by Wilmot or Lannon. (4) Whether the trial court's denial of specific performance was against the manifest weight of the evidence. (5) Whether the same judge who had previously heard the case and ruled on the dismissal should have heard the case upon remandment. Before addressing these specific issues, some discussion of rules applicable to specific performance is in order.

■■ Special rules have developed respecting an action for specific performance of a contract. As stated by the Illinois Supreme Court in *Johnson v. Gianacakos* (1934), 356 Ill. 410, 413:

> "Specific performance of a contract cannot be demanded as a matter of right. Whether or not it shall be awarded rests in the sound discretion of the chancellor and is to be determined from all the facts and circumstances surrounding the case. Unless the

record shows that the parties to a contract have entered into it fairly and understandingly specific performance will not be granted."

As we noted in our previous opinion in this case, *Lannon v. Lamps* (1977), 53 Ill. App. 3d 145, 148:

"[S]pecific performance will be decreed only if it is clearly established that the contract is just, reasonable, and free from misapprehension or misrepresentation."

It is also established that the circuit court, sitting in such actions, is in the best position to judge the credibility of the witnesses and to weigh their testimony. (*Johnson v. Gianacakos* (1934), 356 Ill. 410, 413.) Accordingly, the circuit court's decision in a specific performance action will not be disturbed unless it is found to be contrary to the manifest weight of the evidence and an abuse of the court's discretion. *Johnson v. Gianacakos* (1934), 356 Ill. 410; *Chicago Title & Trust Co. v. Illinois Merchants Trust Co.* (1928), 329 Ill. 334.

We noted in our previous opinion in this case that the plaintiff's own evidence was capable of being interpreted so as to cast sufficient doubt upon the fundamental fairness of the option and the method by which it was obtained. (53 Ill. App. 3d 145, 149.) We reversed the dismissal only because the court, at that stage, should not have weighed the evidence but should have considered it most favorably to plaintiff. Upon our remand, the defense presented its case as well. After hearing all the evidence, the circuit court made specific findings of fact in entering judgment for defendants and denying specific performance.

■■ The court found that there was a bargaining imbalance between the parties in that Lannon and Wilmot, a lawyer and drug store owner, respectively, were active and knowledgeable in business transactions, while the Toedter brothers were elderly retired farmers in poor physical shape and questionable mental competence concerning business matters. The court found that there had been misrepresentations concerning the amount of acreage covered by the 1965 option in relation to the 1964 option. The court found that the Toedter brothers misapprehended the amount and nature of the property they optioned in 1965. The court also found that August Toedter, the only brother active in the discussions, did not understand the terms of the option, as evidenced by the fact that he studied the document in silence for about 2 hours, and by his subsequent comments. The court found and concluded that the option was unconscionable in light of these factors and the fact that Lannon and Wilmot had obtained a five-year option to lease 24 acres for 99 years in exchange for actual consideration of only $10. We note, in passing, that the check was never cashed by the brothers. Based upon the record, the trial court found that the option agreement was not fairly and understandingly

entered into by the Toedters and that specific performance of the contract would be unconscionable. We conclude that the evidence presented was capable of being so interpreted by the court and, therefore, that the decision is supported by the evidence.

■■ The first issue raised by plaintiff on appeal focuses on the admissibility of the testimony from various witnesses concerning the mental competence and understanding of the Toedters at the time of the 1965 option agreement's execution. The defense put on four witnesses, including two medical professionals, who testified as to the poor mental condition of the Toedter brothers. All of these witnesses had observed the Toedters during the time span here in question, 1964-1965. Matilda Lamps was a weekly visitor. Dr. Goodwin Toraason treated the brothers beginning in 1964. It was his testimony that both brothers were suffering from senile dementia in 1965 and were mentally below normal for men of their age. That he noted this condition in 1964 and was unable to specifically recall visiting them in 1965 does not lessen the credibility or relevance of his testimony. The brothers' diagnosed conditions were not of the type which normally improve with age. Defense counsel laid a proper foundation for Toraason's testimony.

■■ ■ The other evidentiary issue specifically raised by plaintiff is the testimony of Matilda Lamps concerning an admission by August Toedter indicating that he did not understand how many acres were in the second option. We are inclined to agree with the defense that her testimony as to August's response was not impermissible hearsay, in that it was used for the purpose of showing his mental condition. However, since the hearsay issue was not raised at trial, we need not address the question since the issue was thereby waived. We would note that evidentiary rulings are within the discretion of the trial court and the focus of an action for specific performance is on all the facts and circumstances bearing upon the transaction giving rise to the action. We find no error or errors in the evidentiary rulings of the court which would require reversal. We are mindful of the plaintiff's evidence indicating soundness of mind on the part of August Toedter and do not mean to intimate by our decision or opinion that this testimony is unworthy of belief. However, questions of credibility and weight are for the trial court, and where supported in the record, its decision will not be disturbed upon appeal.

■■■ The next argument by plaintiff is that the agreement was fair on its face and recited adequate consideration. Therefore, it is argued, the court erred in refusing to order its performance and in finding such agreement unconscionable. The question in this specific performance action was not whether the agreement was fair on its face and sufficient in its recital of consideration. The question, as noted by the authorities already cited, is whether the facts and circumstances concerning the option demonstrate

that it was fairly and understandingly entered into by the parties without misrepresentation or misapprehension. That, in other circumstances and litigation, the document on its face might by upheld is not dispositive of the central issue to be decided in this specific performance case. Secondly, we note that the trial court found that given the imbalance in bargaining positions between the elderly brothers and plaintiff, and given the evidence as to their lack of full understanding of the agreement, and given actual consideration of only $10 for a 5-year option to lease 24 acres of land off Interstate 80 and Highway 51 for 99 years, that to enforce the agreement would be to work an unconscionable result. In an equitable proceeding such as this we find no basis to invoke a doctrine of the presumptive adequacy of the consideration paid, however nominal. On the record, the court acted within its proper scope in examining the actual adequacy of the consideration paid by plaintiff for the option. While we don't find that such consideration makes the agreement *per se* unconscionable, it is another factor for the court to consider in deciding whether the agreement ought to be ordered specifically performed. In the context of factual determinations, the issue is not whether we would make the same findings, but rather whether the findings are contrary to the manifest weight of the evidence or whether there was an abuse of discretion.

■■ The plaintiff next assails the basis for the court's finding that there had been a misrepresentation by him concerning the nature and extent of the acreage covered by the 1965 option. We find evidence in the record indicating that the Toedters were informed that they were optioning an additional 17 acres in 1965, having optioned 7 acres in 1964. The 1965 option, however, covered 24 acres of land and did not cover the same 7 acres that had been optioned in 1964. There is also evidence in the record that the Toedters did not fully understand the amount and location of the land covered by the 1965 option. While the evidence falls short of indicating any intentional misrepresentation of the nature and amount of land optioned in 1965, and to that extent the court's findings are in error, nevertheless, the evidence does amply support the court's conclusion that the Toedters did not fully understand the nature of the option and that they misapprehended its contents. We find no reversible error by the court with respect to its findings on misrepresentation and misapprehension. The evidence, as previously noted, is sufficient to support the judgment of the court without reliance upon a specific finding of misrepresentation on the part of Lannon or Wilmot.

As to the fourth issue raised by plaintiff, we have already determined that the court's decision was not contrary to the manifest weight of the evidence and need not repeat the evidence and reasoning behind that conclusion again.

▪▪ The final issue sought to be raised by appellant Lannon is whether the same judge who had heard the case previously and dismissed it for want of equity should have heard the case on its merits upon remandment. We do not reach the issue since it has not been preserved properly for consideration on appeal. Plaintiff filed no written motion requesting that the trial judge, upon remandment, recuse himself because of prejudice. (See Ill. Rev. Stat. 1977, ch. 110, pars. 501(2), 503; *Board of Trustees v. Cook County College Teachers Union Local 1600* (1976), 42 Ill. App. 3d 1056, 1066, 356 N.E.2d 1089.) In the instant case, plaintiff filed no petition or accompanying affidavit, as required by statute, setting forth the necessary allegations of prejudice. The transcript before us on appeal merely indicates that counsel "suggested" to the court, orally, that the matter should be heard by a different judge on remand. Plaintiff's counsel specifically stated, however, that he didn't feel the judge was prejudiced. We will not strain to find in counsel's suggestion a formal motion to have the trial judge recuse himself for prejudice, especially in light of his repeated comment that he didn't feel the judge was prejudiced. The question has not been preserved for appeal.

For the reasons noted in this opinion, the decision of the Circuit Court of La Salle County is affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.