INDUSTRIAL STEEL CONSTRUCTION, INC., Plaintiff-Appellant and Cross-Appellee, v. JOHN MOONCOTCH *et al.*, Defendants-Appellees and Cross-Appellants.

First District (1st Division)   Nos. 1—92—4188, 1—92—4221 cons.

Opinion filed June 30, 1994.

508

Robert L. Abraham and David E. Alms, both of Niles, for appellant.

Schwartz & Freeman, of Chicago (Stephen L. Tyma and John T. Duax, of counsel), for appellees.

JUSTICE MANNING delivered the opinion of the court:

This is an appeal by defendants John Mooncotch and Commercial National Bank of Berwyn from a judgment of the trial court granting summary judgment in favor of plaintiff Industrial Steel Construction. Defendants argue on appeal that the trial court erred: (1) by determining that plaintiff was entitled to an abatement of rent paid to defendant after April 1991; (2) by granting plaintiff the monthly rent payments as damages where plaintiff failed to prove it suffered a loss; and (3) in denying defendants' post-trial motions. Plaintiff cross-appeals alleging that the trial court erred by failing to abate rents from January 1990. We affirm.

On September 1, 1987, plaintiff Industrial Steel Construction entered into a lease agreement with defendants John Mooncotch and Commercial National Bank of Berwyn, as trustee of an industrial structure in Hodgkins, Illinois. Defendant Mooncotch leased the premises to plaintiff for a monthly amount of $4,827.63. The rider provision to the lease provided plaintiff with an option to purchase the property and in pertinent part stated:

"Lessee is hereby given an option to purchase the premises legally

described in the real estate contract. \*\*\* The purchase price for subject property will be determined as follows. \*\*\* Lessee shall designate an appraiser to perform an appraisal of the premises and Lessor shall also designate a third appraiser to also perform an appraisal of the premises. Of the three appraisals received the appraisal showing the highest and lowest value for the premises shall be disregarded and the purchase price shall be the amount shown in the remaining appraisal, less the sum of $100,000. \*\*\* This option will not be exercisable by Lessee if it is in default under this lease."

On July 14, 1989, plaintiff notified defendants that it was exercising the option to purchase the property. Pursuant to the provision of the rider, plaintiff also named its appraiser as required. That appraiser determined the value of the property to be $650,000. Because defendants did not promptly name a second appraiser to evaluate the property, plaintiff obtained a second appraisal. That appraiser valued the property at $660,000. Defendants eventually presented their appraisal in August 1990, which valued the property at $1,190,000. The parties did not reach an agreement on the sales price, and eventually plaintiff filed an action for specific performance of the contract. Plaintiff continued to pay rent during the pendency of the litigation.

On January 31, 1991, the trial court ordered the parties to have a fourth appraiser evaluate the property. On April 21, 1991, the fourth appraiser submitted his appraisal to the court establishing the value of the property to be $700,000. Subsequently, plaintiff filed a motion for summary judgment. In its motion, plaintiff argued for specific enforcement of the contract at a sales price of $560,000, and that the purchase price should be reduced by the amount of rent which it paid after August 1, 1989, since that was the period within which it exercised its option to purchase the property. Plaintiff based its sales price on the appraisal done by the second nominated appraiser, who appraised the property at $660,000, with an allowance of the $100,000 deduction set forth in the agreement.

Defendants responded to plaintiff's motion for summary judgment asserting that the sales price of the property should have been $600,000, and that the court had no authority to abate the purchase price by the rent plaintiff paid from August 1, 1989.

On June 15, 1992, the trial court granted plaintiff's motion for summary judgment, awarded specific performance of the contract at a purchase price of $600,000 and further ordered that plaintiff be given an abatement by defendants for rent paid after April 30, 1991. The amount of the abatement totalled $75,615.64. Plaintiff ceased

making rent payments to defendants after the court's entry of summary judgment.

Defendants filed several post-judgment motions. Defendants filed a motion to compel performance and to compel payment of rent and other expenses. The motion alternatively sought to have the June 15, 1992, judgment vacated. In a second post-judgment motion, defendants sought to have the trial court reconsider its ruling, to vacate the judgment in part, and to modify the judgment in part. In a third motion, defendants sought to strike plaintiff's complaint and motion for summary judgment, although at that time the trial court had finally entered judgment on the complaint. Defendants also sought to have the trial court create a joint escrow for the rent abatement of $75,671.64.

On October 27, 1992, the trial court denied each of defendants' motions. The court then set a closing date for sale of the property 60 days from the October 27, 1992, order denying defendants' post-judgment motions. On November 23, 1992, defendants again filed a motion to compel, which the court denied as being moot.

Defendants concede that plaintiff exercised its option to purchase the property and do not dispute the court's imposition of the $600,000 sales price. However, defendants argue that the trial court erred by granting plaintiff an abatement for rent paid after April 1, 1991. Also, defendants assert that: (1) Illinois case law specifically provides that abatement of rental payments as damages is not proper; and (2) plaintiff failed to demonstrate compliance with the lease and rider and is therefore not entitled to damages.

Plaintiff contends that the trial court properly determined that it was entitled to a credit for rent paid during the pendency of the case. Plaintiff asserts that by exercising the option to purchase, it became the equitable owner of the property; therefore, it was not required to pay rent. Plaintiff also maintains that it was entitled to a credit towards the purchase price for rent paid to defendants after its appraisal was done in January 1990. Plaintiff further argues that the trial court had authority to assess damages against defendants.

In *Artful Dodger Pub, Inc. v. Koch* (1992), 230 Ill. App. 3d 806, 596 N.E.2d 39, the appellate court dealt with a similar issue as that presented in the instant case. In *Artful*, plaintiff and defendant entered into a lease agreement which had a provision allowing plaintiff the option to purchase the property. Plaintiff initially exercised its option by serving notice on defendant June 27, 1987, through registered mail. Subsequent to the letter of June 27, 1987, a second letter was sent by plaintiff's counsel to defendant on July 16, 1987, notifying defendant that the June 27, 1987, offer was rescinded

and that plaintiff was exercising its option to renew the lease three additional years. After consulting with his clients, on July 20, 1987, plaintiff's counsel sent a third letter to defendant notifying him of plaintiff's intent to hold defendant to the purchase option and that a title should be provided and a closing date set. Defendant responded by letter indicating that he did not intend to sell his building.

Plaintiff subsequently filed its complaint for specific performance to have defendant pay rent from July through August 1987. The court found that a valid contract existed and that plaintiff properly exercised its option under the contract. (*Artful*, 230 Ill. App. 3d at 811.) Thereafter, plaintiff, by equity, became the owner of the property subject to the rights of defendant. The court reasoned that where the lease did not expressly provide for payment of rent to defendant, he was not entitled to collect rent. The court further found that at the time plaintiff exercised its option the relationship of lessor and lessee terminated, and that the parties' relationship to one another became that of vendor and vendee. *Artful*, 230 Ill. App. 3d at 811.

In the instant case, on July 14, 1989, plaintiff notified defendants by letter that it chose to exercise the option. In that same letter plaintiff nominated an appraiser. The rider provision of the contract required that plaintiff and defendants each give notice of their nominated appraisers within 10 days after plaintiff exercised its right under the option. Plaintiff complied with the provision while defendant did not. Plaintiff subsequently delivered its appraisal in January 1990, about six months after it exercised the option. Defendants submitted their appraisal in August 1990. Plaintiff's appraisal was $600,000 and defendants' was $1,190,000. The option agreement provided that where the parties disagreed as to the appraised value, a third appraiser would be mutually agreed upon by the parties. On April 1, 1991, the court-appointed appraiser determined the value of the property to be $700,000. This was the middle value of all three appraisals. According to the formula, $100,000 was be deducted from the $700,000 and the sales price was set at $600,000—the difference between those two figures.

■ An option, when accepted and exercised according to its terms, becomes a present contract for the sale of the premises. (*Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53.) In the instant case, although plaintiff exercised its option on July 14, 1989, the terms of the option were not fulfilled until a sales price was determined by the court-appointed appraiser in April 1991. In July 1989, plaintiff and defendant had not agreed upon a sales price; thus, the option at that time had not been exercised according to the contract terms.

■ We find *Artful* persuasive for the proposition that once the

option is properly exercised, the parties' prior relationship of lessor and lessee is terminated, and the resulting relationship becomes that of vendor and vendee. (See, *e.g.*, *Artful Dodger Pub, Inc. v. Koch* (1992), 230 Ill. App. 3d 806, 596 N.E.2d 39; *Cities Services Oil Co. v. Viering* (1949), 404 Ill. 538, 89 N.E.2d 392.) Hence, in equity, the property under contract is regarded as that of plaintiff, subject to the rights of defendants. (*Artful*, 230 Ill. App. 3d at 811.) Thus, in the instant case, in the absence of a provision in the contract, defendants were not entitled to the rent after plaintiff properly exercised the option. See, *e.g.*, *Cities*, 404 Ill. at 554.

▓ As to defendants' argument that plaintiff has failed to show that it suffered damages, we note that the court in *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1973), 77 Ill. App. 3d 518, 527, 395 N.E.2d 1143, held that the trial court hearing chancery matters has full jurisdiction to award such legal damages as have resulted from delay in the performance of a contract in addition to decreeing specific performance. If coexistent remedies are consistent with each other, a party may adopt all or select any one which he thinks best suited to the end sought. *Rotogravure*, 77 Ill. App. 3d at 527.

In the instant case, the contract required that in order for plaintiff to exercise the option, it could not be in default with any of the contract terms. Plaintiff testified that it continued to pay the rent in order to comply with the contract. However, at the time plaintiff exercised its option there was still an outstanding condition remaining to be fulfilled. Plaintiff and defendants had not reached an agreement on the sales price, as defendants' appraisal was almost twice that of plaintiff's. Thus, it was only after the court-ordered appraisal was delivered in April 1991 that the terms of the option contract were satisfied. At that time, plaintiff became the equitable owner of the property and was not responsible for payment of any rents to defendants. Therefore, the trial court properly determined that plaintiff was entitled to a rent abatement. See, *e.g.*, *Lidikevicz v. Kopala* (1925), 315 Ill. 404, 410, 146 N.E.2d 461; *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 527, 395 N.E.2d 1143.

We find that the trial court's abatement of rents was not meant to punish defendants as alleged in their briefs. When a party sues for specific performance, he may also seek, and the equity court may award, other relief, including monetary damages that will make the party whole. (*Gordon v. Bauer* (1988), 177 Ill. App. 3d 1073, 1080, 532 N.E.2d 855.) Here, the credit for rents paid from April 1991 was an equitable adjustment made by the trial court in light of plaintiff's equitable ownership, as well as the delay by defendants, and not dam-

ages. At the time the final option condition was met, plaintiff became the equitable owner of the property. As the owner of the real estate, he was entitled to collect the rents on the property. If plaintiff's obligation to pay rent remained after April 1991, it would have been an obligation to pay rent to himself, which would certainly seem to be superfluous action. (See, *e.g.*, *Amann v. Frederick* (N.D. 1977), 257 N.W.2d 436, 441.) Thus, the rent paid to defendant was in equity that due to plaintiff. *Lidikevicz*, 315 Ill. at 410.

■ Defendants also maintain that the trial court erred in denying their post-judgment motions. Specifically, defendants assert that plaintiff's motion for summary judgment was not verified and, in the absence of verification, was deficient. This argument is without merit. A motion for summary judgment need not be verified. (*People ex rel. First National Bank v. City of North Chicago* (1987), 158 Ill. App. 3d 85, 103, 510 N.E.2d 577.) Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) only requires that an affidavit in support of or in opposition to a motion for summary judgment be based on the personal knowledge of the affiant. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 502 N.E.2d 1295.) As to the remaining post-judgment motions, the decision to grant a post-trial motion is in the discretion of the trial court. (*Mryszuk v. Hoyos* (1992), 228 Ill. App. 3d 860, 863, 593 N.E.2d 900.) The test for whether a court abused its discretion in denying a post-judgment motion is whether the refusal violates the moving party's right to fundamental justice and manifests an improper application of discretion. *In re Marriage of Steele* (1991), 212 Ill. App. 3d 425, 433, 571 N.E.2d 236.

Defendants' post-judgment motions requested that the court reconsider, modify and strike plaintiff's motion for summary judgment. Defendants also requested that an escrow be set up for placement of the rent abatement monies. The court had already entered judgment on the complaint at the time defendants filed these motions; hence, defendants' motion to strike was moot. The remaining motions raised no new issues that affected defendants' fundamental rights. Therefore, we cannot say that the trial court abused its discretion in denying defendants' post-judgment motions.

■ As to the counterappeal, plaintiff contends that the trial court should have abated rent from January 1, 1990, the month in which plaintiff delivered its appraisal. As we have explained above, the option contract was not complete until a sales price was determined. That price was not determined until April 1991 after the court-appointed appraiser completed his appraisal. An option contract becomes a present contract for sale when it is accepted and the terms have been exercised. (*Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d

53.) The terms of the contract in the instant case were not completed until April 1991. Therefore, the trial court's decision to abate rents from that day forward was not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.