FOURTH DIVISION

No. 1-09-3044

| | | |
|---|---|---|
| MARYBELLE MANDEL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No.  07 CH 35077 |
| | ) | |
| THOMAS E. HERNANDEZ, | ) | The Honorable |
| | ) | Nancy J. Arnold, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Marybelle Mandel, appeals the trial court's denial of her request to receive monetary damages for a breach of contract claim involving the sale of real estate to her from defendant Thomas Hernandez finding that such damages were inconsistent with the award of specific performance.  Mandel first claims that the trial court erred in holding that it could not award both monetary damages and specific performance for a breach of contract claim.  Mandel also claims that the trial court erred in denying Mandel's request to amend her complaint postjudgment to conform to the proofs pursuant to section 2-616(c) of the Illinois Code of Civil Procedure (735 ILCS 5/2-616(c) (West 2002)).  Mandel further claims that the trial court erred in denying her request to amend the complaint to add a new cause of action and that the trial court should have conducted a subsequent and separate hearing or a new trial to determine

monetary damages resulting from the delay in Hernandez's performance of the contract. For the reasons that follow, we affirm.

Background

On March 29, 2007, Mandel and Hernandez entered into a written contract whereby Hernandez agreed to sell to Mandel residential property located at 731 West 61st Place, Summit, Illinois, that Hernandez owned. The residential real estate contract, containing the signatures of both parties and identifying the subject property, was admitted into evidence without objection. The contract provided for a fixed purchase price of $50,000, earnest money in the amount of $1,000 to be paid within 15 days of acceptance, and a closing date of May 20, 2007, or sooner. Hernandez refused to proceed to closing and Mandel subsequently filed a two count complaint against Hernandez. In count I, Mandel sought specific performance and damages incidental to specific performance. Alternatively, Mandel sought damages for breach of contract under count II. Hernandez raised the following four affirmative defenses: (1) that he was elderly and ill and thus unable to comprehend the nature of the contract; (2) that Mandel failed to disclose that she was a licensed real estate broker and thus took advantage of him; (3) that the terms of the contract were unconscionable; and (4) that Mandel failed to timely deliver the earnest money and appear at closing.

The record on appeal does not include deposition testimony, but the trial court's written findings after trial are included in the record, which discusses the party's testimony. The following facts are based in part on the trial court's written findings after trial. Mandel is in the business of buying real estate properties, renovating the properties, and then reselling them.

Mandel communicated her involvement in the real estate business to Hernandez when the parties first met. Mandel expected the renovation work on the property to be completed within 90 days and anticipated the resale value of the property to be between $210,000 and $240,000. Mandel's husband, who was also involved in the business of renovating and reselling properties, testified that renovation of the property would entail replacing the exterior siding, insulation, roof and interior walls, as well as gutting the kitchen.

Hernandez, who was 80 years old at the time, testified that the property had been vacant for some time and that he hoped to get rid of it. According to Hernandez, Mandel's husband inquired about an asking price after hearing that Hernandez hoped to dispose of the property. Hernandez asked for $50,000 and Mandel's husband said, "Sold."

Mandel claims that the parties discussed a price at a later time while viewing the property. Hernandez told Mandel that the first person who offered him $50,000 for the house could have it. According to Mandel, after agreeing upon the price, Hernandez requested a written agreement. The parties proceeded to sign a standard form real estate contract at Hernandez's house. Mandel testified that the parties acknowledged each line of the contract and together completed the appropriate blanks. Hernandez denied having seen the real estate contract and stated that he did not remember signing it.

The parties also disputed delivery of the earnest money. Mandel testified that she mailed Hernandez a check for the earnest money on March 29, 2007, and later contacted him to confirm receipt. According to Mandel, Hernandez stated that he had not received the check. Mandel subsequently sent a second check by overnight mail, return receipt requested. The second check was returned to Mandel, and when she contacted Hernandez, he informed her that he was

3

unwilling to complete the transaction. Two checks were admitted into evidence, one dated March 29, 2007, and the other dated April 11, 2007.

Hernandez's daughter testified that Hernandez received a check for the earnest money. His daughter determined that the check arrived late according to the contract's terms and returned the money to Mandel. Hernandez later informed Mandel's attorney that he had no intention of proceeding with the contract.

Mandel testified that she was ready, willing, and able to perform the contract and that she deposited the cash and closing documents in an escrow account. Hernandez did not appear at closing or accept the purchase money and the purchase money was returned to Mandel a month later.

At trial, both parties presented testimony regarding the property's approximate value at the time of contract. Michael Kaput, testifying on Hernandez's behalf, estimated that the property's listing price at the time of the contract would have been between $139,000 and $149,000 based on four properties that he considered comparables. Mandel offered the testimony of a licensed real estate broker, Opal Fabien, and a certified appraiser, Elizabeth Hohn. Fabien considered four different properties as comparables and offered the opinion that at the time of the contract an appropriate listing price for the property would have been $80,000. Considering three other comparable sales, Hohn offered her opinion that at the time of the contract, the market value of the property was $80,000. None of the testifying real estate experts used the same comparables in arriving at their estimates. Both Hohn and Fabien testified that beginning in 2007, real estate values began to decline and Mandel would not likely obtain the

benefit of her bargain as originally thought in 2007. Mandel also presented expert testimony that renovation costs to make the property habitable and marketable totaled $50,000.

At the conclusion of trial, the trial court found that the parties had entered into a valid real estate contract, that Mandel had fully performed her contractual obligations and was at all times ready, willing, and able to close the transaction, and that Hernandez breached the contract by failing to deliver the deed. The trial court ordered Hernandez to specifically perform the contract, but declined to award monetary damages for the delay in performance ruling that an award of monetary damages is inconsistent with the award of specific performance. The trial court ruled that damages for lost profits could not be recovered along with an order for specific performance. The trial court stated that Mandel pursued her claim for specific performance over the alternative claim for damages for breach of contract. The trial court also stated that Mandel sought recovery of her expected profits had Hernandez completed the sale when the real estate market still allowed for a substantial profit upon resale. The trial court held that Mandel could not recover those lost expected profits consistently with specific performance.

Mandel filed a posttrial motion to reconsider and a motion to amend the complaint to conform the pleadings to the proofs. The posttrial motion alternatively requested a hearing to address the issue of damages incident to the delay in performance. The trial court denied Mandel's posttrial motion. Mandel timely appealed.

## Standard of Review

The decision to award or deny monetary damages in addition to specific performance rests within the sound discretion of the trial court. *Yonan v. Oak Park Federal Savings & Loan*

*Ass'n*, 27 Ill. App. 3d 967, 97-78 (1975), citing *Fleming v. O'Donohue*, 306 Ill. 595, 601-02 (1923). The decision to allow an amendment to a complaint also rests within the sound discretion of the trial court, and absent an abuse of discretion, we will not disturb the trial court's decision. *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 331 (2008). A trial court abuses its discretion when " 'no reasonable person would take the view adopted by the trial court.' " *Compton*, 382 Ill. App. 3d at 331-32, quoting, Keefe-Shea Joint Venture v. City of Evanston, 364 Ill. App. 3d 48, 61 (2005).

Analysis

Mandel first contends that the trial court erred in ruling that monetary damages for a breach of contract are inconsistent with an order for specific performance of the contract. Mandel cites *Talerico v. Olivarri*, 343 Ill. App. 3d 128 (2003), and *Rotogravure Service, Inc. v. R.W. Borrowdale Co.*, 77 Ill. App. 3d 518 (1979), as support for her position that a trial court may award monetary damages incidental to a defendant's delay in performance in addition to ordering specific performance. Although we agree with Mandel that monetary damages incidental to a delay in performance may be awarded in addition to specific performance, we conclude that the trial court did not abuse its discretion in finding that the lost resale profits that Mandel seeks here are not recoverable.

As established in *Rotogravure* and *Talerico*, when a decree of specific performance does not provide complete relief, the injured party is entitled to those damages that will make him whole, including monetary damages incidental to and caused by a delay in performance. *Rotogravure,* 77 Ill. App. 3d at 527; *Talerico*, 343 Ill. App. 3d at 132; see also *Industrial Steel Construction, Inc. v. Mooncotch*, 264 Ill. App. 3d 507, 512 (1994). The injured party is entitled

to damages incurred between the time of breach and the time of performance if those damages arose naturally from the breach or were reasonably foreseeable at the time the contract was executed. *Talerico*, 343 Ill. App. 3d at 132-33; *Madigan Brothers, Inc. v. Melrose Shopping Center Co.*, 198 Ill. App. 3d 1083, 1089 (1990). Lost profits may be recovered as damages resulting from a breach of contract if both parties at the time of entering into the contract contemplated that such profits would be lost if the contract was breached. *Spangler v. Holthusen*, 61 Ill. App. 3d 74, 80 (1978). A trial court will award lost profits "only if: their loss is proved with a reasonable degree of certainty; the court is satisfied that the wrongful act of the defendant caused the loss of profits; and the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into." *Milex Products, Inc. v. Alra Laboratories, Inc.*, 237 Ill. App. 3d 177, 190 (1992).

Here, Mandel sought damages that did not directly result from Hernandez's delay in performance. Rather, Mandel's lost resale opportunity was contingent upon a string of uncertain collateral transactions, such as the renovation of the property within budget, the placement of the property on the market within 90 days of purchase, the fortuitous appearance of a prospective buyer, an agreement to pay the projected resale price and the completion of the resale transaction. Hernandez cannot be held responsible for lost profits that were contingent on collateral transactions of which he had no specific knowledge at the time of contract. See *Spangler,* 61 Ill. App. 3d at 82 (holding that lost profits from a proposed collateral sale arising after execution of the real estate sales contract could not be imposed upon the sellers of the real estate when the collateral sale was unknown to the sellers). Moreover, even if Hernandez had general knowledge that Mandel was in the real estate business, such knowledge is insufficient to charge him with the knowledge necessary to sustain a claim for lost resale profits. See *Spangler*,

7

61 Ill. App. 3d at 82 (holding that damages for the loss of future resale profits could not be recovered because defendant's general knowledge that plaintiff developed land was insufficient to place defendant on notice). Since Mandel's asserted monetary damages for the lost resale opportunity were not reasonably within Hernandez's contemplation at the time of contract, the trial court did not abuse its discretion in finding that those damages were not recoverable.

Next, Mandel claims that she should have been granted leave to amend her complaint to conform the pleadings to the proofs pursuant to section 2-616(c). Mandel's proposed amended complaint added a request for monetary damages to count I, which was the specific performance count, modified count II to claim lost resale profits rather than general monetary damages, and added count III to request monetary damages in addition to specific performance. Mandel claims that her proposed amended complaint would cure the defects of the original complaint by circumventing the limitations that arise when pleading alternative causes of action in a complaint.

We disagree with Mandel that the trial court abused its discretion in denying leave to amend her complaint pursuant to section 2-616(c). After final judgment, a party may amend pleadings only to conform the pleadings to the proofs as provided by section 2-616(c). According to section 2-616(c):

> "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuances that may be just." 735 ILCS 5/2-616(c) (West 2002).

We note that although this court encourages a liberal construction of section 2-616(c) as applied to prejudgment motions, it has recognized a separate discretionary standard for allowing amendments after judgment. *Compton*, 382 Ill. App. 3d at 332 (noting that a trial court's

decision to allow amendments before judgment is reviewed differently than a trial court's decision to allow amendments after judgment); *Colgan v. Premier Electrical Construction Co.*, 92 Ill. App. 3d 407, 412 (1981) (noting that different discretionary standards exist for permitting postjudgment amendments).

Citing authorities that involve prejudgment amendments, Mandel fails to persuade this court that a trial court should exercise its discretion liberally in favor of allowing amendments after final judgment. Mandel cannot restructure her original complaint after judgment by labeling it as a section 2-616(c) amendment to conform the pleadings to the proofs. In her original complaint, Mandel elected to request monetary damages resulting from the breach of contract in the alternative to obtaining specific performance of the contract. Mandel in her proposed amended complaint pleads monetary damages in addition to specific performance to cure the limitations resulting from pleading in the alternative in a complaint. Seeking to remedy the implications of requesting relief in the alternative in a complaint, however, is not a proper basis to amend a complaint to conform to the proofs at trial.

Also, Mandel contends that in reviewing the trial court's decision to deny leave to amend, this court should consider whether the amendment would cure the defective pleading, whether the amendment would prejudice Hernandez and whether the amendment is timely. Although these factors are among the factors that a reviewing court considers in deciding whether the trial court properly ruled on a motion to amend, these factors do not apply to amendments proposed after final judgment. *Compton*, 382 Ill. App. 3d at 332; see also *Kupianen v. Graham*, 107 Ill. App. 3d 373, 377 (1982) (first articulating these factors in the context of a motion to amend during the pleading stage). Even if those factors were applicable to postjudgment motions to amend, Mandel would still not prevail in her claim because she had

previous opportunities prior to final judgment to amend her complaint to eliminate the alternative form of pleading. A section 2-616(c) motion is improper where, after judgment, the moving party seeks to add claims or causes of action that were available at the time of the original complaint. See *Vanderplow v. Krych*, 332 Ill. App. 3d 51, 58 (2002) (holding that a request to add new causes of action was not a valid postjudgment motion); see generally *Stringer Construction Co. v. Chicago Housing Authority*, 206 Ill. App. 3d 250, 260 (1990) (holding that an amendment is inappropriate after the trial has begun if the issues could have been raised in the original pleading and no excuse is given for failing to raise those issues earlier). Where a moving party had previous opportunities to cure the asserted defect, the trial court does not abuse its discretion by denying leave to amend. See *Kostecki v. Dominick's Finer Foods, Inc.*, 361 Ill. App. 3d 362, 373-74 (2005) (holding that the trial court did not abuse its discretion by denying leave to amend where it had already permitted amendment).

Mandel relies on *Talerico* to support her position that a party may amend a complaint after judgment to recover additional relief. In *Talerico,* the trial court permitted the plaintiff to file a first amended complaint for damages but then dismissed the complaint pursuant to section 2-619(c) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(c) (West 2002)) after finding that the damages were inconsistent with the grant of specific performance and were not reasonably foreseeable. *Talerico*, 343 Ill. App. 3d at 129. Concluding that the trial court erred in dismissing the complaint because the plaintiff could recover monetary damages in addition to specific performance and a jury could find the damages reasonably foreseeable, this court reversed and remanded. *Talerico*, 343 Ill. App. 3d at 132-33. The *Talerico* court, however, did not consider whether it is appropriate to grant a postjudgment motion to amend. Thus, *Talerico* is not dispositive on this issue and Mandel's reliance on the case is not persuasive.

Moreover, although Mandel claims damages for lost resale profits caused by Hernandez's delay in performance as a separate count in the proposed amended complaint, the original complaint may not be amended postjudgment to add that new count. Mandel submitted exhibits and testimony regarding lost resale profits during the trial. Thus, Mandel could have requested the lost profit relief and pled the cause of action in the original complaint or requested permission from the trial court to amend the pleadings prior to final judgment because the basis for recovering the monetary damages did not relate to any evidence that was not known when the litigation commenced. We note that Mandel in her motion to amend the complaint stated in part that "Mandel further established these damages through her own testimony, corroborated by expert witnesses, and uncontoverted [*sic*] by the defendant." Even though Mandel did not specify in detail what the content of the proofs at trial were, she indicated that her testimony constituted proof, which supports a conclusion that the matter she seeks to amend the complaint with was within her knowledge when the litigation began and during the proceedings. Generally, a trial court should not allow an amendment "after trial has begun if the proposed amendment raises matters of which the pleader had full knowledge at the time of interposing the original pleading and there is no excuse for failing to raise those matters in the original pleading." *Stringer Construction Co.,* 206 Ill. App. 3d at 260. Mandel did not provide an excuse as to why the request for monetary damages was not brought as a separate cause of action in the originally filed complaint. Accordingly, the trial court did not abuse its discretion in denying Mandel's postjudgment motion to amend the pleadings to conform to the proofs at trial.

Finally, we are not persuaded by Mandel's alternative claim that the trial court should have allowed the filing of the proposed amended complaint and conducted a separate hearing or trial regarding the damages that Mandel incurred as a result of the delay in Hernandez's

performance. Mandel contends that the trial court erred in denying her motion to amend her complaint to state a new cause of action for damages incident to the delay in specific performance of the contract. Mandel claims that a cause of action for damages incident to a delay in specific performance does not ripen and accrue until the award of specific performance is entered.

In essence, Mandel's claim is that she requested leave to amend the complaint postjudgment to add a new cause of action and the trial court erred in denying that request. Amendments to pleadings to add a new cause of action may be allowed at any time before final judgment. 735 ILCS 5/2-616(a) (West 2002). A complaint "may only be amended after judgment to conform the pleadings to the proofs." *Witvoet v. Fireman's Fund Insurance, Inc.*, 317 Ill. App. 3d 915, 920 (2000). Amending a complaint to add a new cause of action is not a proper postjudgment motion. *Fleisch v. First American Bank*, 305 Ill. App. 3d 105, 110 (1999). Moreover, if the trial court enters a final judgment in a case, a plaintiff has no statutory right to amend a complaint. *Compton*, 382 Ill. App. 3d at 332. In this alternative claim on appeal, Mandel maintains that the trial court erred in denying the motion to amend to add a new cause of action and in not conducting a separate hearing or a new trial regarding the damages issue. Mandel's request fails to adhere to the well-settled law that a complaint may not be amended postjudgment. *Fleisch*, 305 Ill. App. 3d at 110. Accordingly, the trial court did not abuse its discretion in denying Mandel's motion to amend the complaint and conduct a separate hearing or new trial to address the damages issue.

Conclusion

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Mandel's request for relief consisting of both specific performance and estimated lost resale profits that were uncertain and not contemplated at the time of contract. The trial court also did not abuse its discretion in denying Mandel's request in a posttrial motion to amend the pleadings to conform to the proofs at trial because the information supporting the requested relief was available at the time of the original complaint and after the proceedings commenced. Finally, the trial court did not abuse its discretion in denying the request to amend the pleadings to add a new cause of action and hold an evidentiary hearing or new trial addressing the monetary damages claim because amendments to a complaint postjudgment other than to conform to the proofs are not permitted.

Affirmed.

O'MARA FROSSARD, and NEVILLE, JJ., concur.

1-09-3044

_____


MARYBELLE MANDEL,


                Plaintiff-Appellant,


v.


THOMAS E. HERNANDEZ,


                Defendant-Appellee.


_____


No. 1-09-3044


Appellate Court of Illinois

First District, Fourth Division


September 23, 2010

_____

14

1-09-3044

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court.

O'MARA FROSSARD and NEVILLE, JJ., concur.

_____

Appeal from the Circuit Court of Cook County.

Honorable Nancy J. Arnold, Judge Presiding.

_____

For APPELLANT, Lawrence G. Zdarsky, Woodridge, IL (Lawrence G. Zdarsky, of counsel)

For APPELLEE, Gerald P. Nordgren and Marie C. Fahnert, Chicago, IL (Gerald P. Nordgren, Marie C. Fahnert, of counsel)