2015 IL App (1st) 140969

SECOND DIVISION
September 15, 2015

Nos. 1-14-0969 and 14-2466 (cons.)

| | | |
|---|---|---|
| DR. KIMBERLY RUFFOLO, JOSEPH RUFFOLO, and DR. KIMBERLY RUFFOLO, D.V.M., P.C., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| | ) | No. 08 CH 03622 |
| WILLIAM JORDAN, Executor of the Estate of Dr. Donald Dreessen, and MOUNT PLAINES ANIMAL HOSPITAL, LTD., | ) ) ) | |
| | ) | Honorable Kathleen Pantle |
| Defendants-Appellants. | ) | Judge Presiding |

JUSTICE SIMON delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    This case concerns a real estate transaction following the purchase of a veterinary practice.

The purchase agreement contained a lease for the clinic that housed the practice.   The agreement

also contained an option for the purchaser-lessee to buy the property six years later, which plaintiff

tried to exercise.   As the parties' lawyers attempted to consummate the deal, the transaction

became tangled and protracted.   The parties could not agree on an appraiser, an appraised value, a

closing date, plaintiff's rent obligations, the list goes on.   Ultimately, plaintiff filed this case for

specific performance asking the court to order defendant[1] to complete the sale. The trial court found for plaintiff and ordered defendant to sell the property. The court held that the purchase price was to be $525,000, consistent with the appraised value put forth by a third-party appraiser. The trial court also held that defendant was not entitled to any credit towards the purchase price for a period in which plaintiff stopped paying rent. Defendant appeals those rulings. We affirm in part and reverse in part.

¶ 2                                 BACKGROUND

¶ 3     On August 11, 1999, plaintiff Kimberly Ruffolo agreed to buy and defendant Donald Dreessen agreed to sell the veterinary practice known as Mt. Plaines Animal Hospital, Ltd. Part of the purchase agreement was a lease for the clinic located at 888 E. Northwest Highway, Mount Prospect, Illinois. Another part of the agreement gave plaintiff an option to purchase the property. The option gave plaintiff a right of first refusal for the first six years and the right to purchase the property outright after six years. The option agreement states that the purchase must be completed within six months of the option being exercised.

¶ 4     On July 12, 2005, a month before the option for an outright purchase became viable, plaintiff's attorney sent defendant's attorney a letter indicating plaintiff's intent to purchase the property. After the option vested, the parties began to negotiate the details that remained unresolved, most importantly, the price. The option agreement provides that the purchase price is to be determined by an appraiser selected by the parties. It further provides that if the parties are unable to agree on an appraiser, then each can select an appraiser and the parties' selected appraisers are to choose a third appraiser. Plaintiff floated the name of a prospective appraiser

_____

[1] It appears that defendant Donald Dreessen died during the pendency of the case and the executor of his estate was substituted as a party-defendant. However, at times, we will refer to Dreessen as "defendant."

and defendant rejected him. Defendant selected Matt Bulthuis as an appraiser and plaintiff confirmed that selection, but stated that she would not be bound by his appraisal. Plaintiff stated that she would review Bulthuis's appraisal and if it was not acceptable, then they could proceed to have their respective appraisers hire a third-party appraiser. Defendant agreed to that. Complications arose that delayed the completion of the Bulthuis appraisal. The six month period in which the purchase was supposed to close expired. But the parties kept negotiating the terms of the sale.

¶ 5    While the purchase negotiations were ongoing, plaintiff had continued paying the rent due under the lease. However, on March 1, 2007, plaintiff stopped paying. That dispute took on a life of its own as the dispute concerning the appraiser continued. Correspondence between the attorneys indicates that eventually defendant selected Robert Gorman as his appraiser and plaintiff selected William Falkanger. Gorman and Falkanger conferred and selected Greg Schmitt of RJ Schmitt as the third-party to appraise the property. By letter, defendant maintained that the option had terminated because the lease terminated as a result of nonpayment of rent and indicated that he was not waiving that position just because the parties were going forward in the appraisal process. In October 2007, Schmitt appraised the property at $525,000 which was roughly in the middle of plaintiff's suggested value of $340,000 and defendant's suggested value of $750,000.

¶ 6    The parties continued to dispute their respective rights and obligations. In December 2007, defendant filed a forcible entry and detainer suit on the basis of the unpaid rent. That suit was dismissed. The rest of the events after Schmitt's appraisal was submitted remain somewhat unclear, but the sale never closed and plaintiff filed this suit three months later to compel the sale.

¶ 7    The trial court granted plaintiff's motion for summary judgment in nearly all respects

Nos. 14-0969 and 14-2466 (cons.)

finding that the option was valid and that plaintiff had properly exercised it, creating an enforceable agreement for a sale of the property for $525,000. The trial court held that defendant was not entitled to any unpaid rent and that the cessation of rent payments did not terminate the option. The trial court found that the delay in selecting an appraiser and effectuating the sale was attributable to defendant and that plaintiff was ready, willing, and able to perform within the option period. Defendant argues that the trial court erred when it entered summary judgment and when it ultimately ruled in plaintiff's favor.

¶ 8                                ANALYSIS

¶ 9     Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits, viewed in a light most favorable to the nonmovant, fail to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 127-28 (2005). If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1016-17 (2005). We review the grant of summary judgment *de novo*. *Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 24.

¶ 10    Any issue concerning the construction, interpretation, or legal effect of a contract is a question of law. *Daniel v. Ripoli*, 2015 IL App (1st) 122607, ¶ 65. The primary goal of contract interpretation is to give effect to the intent of the parties. *Palm v. 2800 Lake Shore Drive Condominium Ass'n,* 2014 IL App (1st) 111290, ¶ 75. The words of a contract derive their meaning from the context in which they are used. *Northwest Podiatry Center, Ltd. v. Ochwat,*

- 4 -

2013 IL App (1st) 120458, ¶ 40. A contract must be interpreted as a whole and the plain and ordinary meaning must be ascribed to unambiguous terms. *Palm*, 2014 IL App (1st) 111290, ¶ 75.

¶ 11 As an initial point, we agree with the trial court that plaintiff had a valid option and that she properly exercised it. Defendant's objections concerning the expiration of the six month closing period and the other technical objections were waived because the parties continued on with the negotiation process long beyond that period and continued to work towards a sale under the guise that the option was valid and that plaintiff had a vested right to purchase the property. See *Asset Recovery Contracting, LLC v. Walsh Construction Co. of Illinois*, 2012 IL App (1st) 101226, ¶ 97. Similarly, plaintiff's reliance on the expiration of the option period to support her arguments is misplaced because plaintiff continued to pay rent as if the lease was valid and never repudiated her obligations under the lease. *Id*. Neither party treated the six month period as determinative until litigation began and neither party is justified in relying on it.

¶ 12 Defendant argues that the trial court improperly resolved disputed questions of fact when making its summary judgment ruling and improperly construed the record in plaintiff's favor, rather than strictly against plaintiff as the movant. However, the correspondence between the parties' attorneys, which was admitted to be genuine during the course of discovery, and the other documents and undisputed facts were entirely sufficient to demonstrate plaintiff's right to specific performance. In particular, defendant argues that Schmitt's appraisal was only done for settlement purposes and that he never agreed to be bound by it. But defendant's attorney sent a letter stating that "it [was his] understanding that Mr. Gorman (defendant's appraiser) and Mr. Falkenger [sic] (plaintiff's appraiser) have selected Greg Schmidt [sic] of RJ Schmidt [sic] to

appraise the above property." Under the option agreement, when the parties' respective appraisers select a third-party appraiser, the parties are bound by that appraisal. Although the letter indicates that defendant expressed his intention not to be bound by Schmitt's appraisal, his reasons for doing so were inconsistent with his rights and obligations.

¶ 13 By the time Schmitt's appraisal was completed it had been more than two years after plaintiff exercised her option and the parties could still not agree on a price, despite the straightforward process set forth in the option agreement. Defendant claimed that he would not be bound by the Schmitt appraisal because he believed that the option terminated because the lease terminated when plaintiff stopped paying rent. But as explained in more detail below, we disagree that the option terminated when plaintiff stopped paying rent. Regardless of defendant's desire not to be bound by the neutral appraisal, that was the process the parties agreed to at the outset. The end result is that the parties' selected appraisers chose a third-party appraiser and the third-party appraiser provided an independent valuation of the property. After two years, plaintiff was entitled to a concrete price and some degree of finality. The process was unnecessarily protracted, but at some point defendant had to honor his obligation to sell and a price had to be set. Defendant was afforded a fair determination of the price according to the process set forth in the parties' agreement. The facts that the trial court considered were all apparent from the attorney correspondence and the other uncontradicted evidence. The trial court did not, as defendant argues, construe the record against defendant.

¶ 14 A party is entitled to specific performance of a contract for conveyance of real estate upon establishing that it was ready, willing, and able to perform under the contract but was prevented from doing so by the acts of the other party. *Schwinder v. Austin Bank of Chicago*, 348 Ill. App.

3d 461, 477 (2004). Specific performance is a matter of sound judicial discretion controlled by established principles of equity exercised upon a consideration of all the facts and circumstances of a particular case. *Id.* When a lease contains an option to purchase and such an option is exercised according to its terms, it becomes a present contract for the sale of the property. *Artful Dodger Pub, Inc. v. Koch*, 230 Ill. App. 3d 806, 811 (1992). The trial court held at the summary judgment stage that plaintiff had clearly established that she was ready and willing to perform. The communications throughout the negotiations made clear that plaintiff wanted to purchase the property. She was ready and willing and the only obstacle was setting the price. There was no evidence to the contrary. This finding was properly made at the summary judgment stage. The trial court, however, held a trial on the issue of plaintiff's ability to perform—her ability to obtain the funds to complete the sale. Again, there was clear evidence from plaintiff, her husband, and Dianna Sciana, a loan officer at Cornerstone Bank, that plaintiff would have no issue paying the purchase price. The trial court correctly found that plaintiff was ready, willing, and able to perform.

¶ 15 The only material hold up in the purchase and sale was the price. The trial court appropriately accepted the third-party appraisal as the purchase price where the parties agreed that such an appraisal would be binding. Though the process of getting to the point of sale was not flawless, the result conforms to the intention of the parties at the time of contracting. The record evidence demonstrated without contradiction that plaintiff had a valid option and that she was ready, willing, and able to perform under it. Thus, plaintiff was entitled to, and was rightfully granted, summary judgment.

¶ 16 Defendant argues that the trial court erred by finding that plaintiff was justified to stop

paying rent when she did so in March 2007. Defendant also argues that the trial court erred by denying his counter-motion for summary judgment in which he argued that plaintiff's failure to pay rent terminated the option. The issues are interconnected—what effect did the discontinuance of rent payments have on the parties' relationship? Plaintiff paid rent from August 2005, when she exercised the option, to March 2007. Plaintiff argues here, as she did in the trial court, that after the six month option period expired, she was the equitable owner of the property and, therefore, she was not required to pay rent.

¶ 17    Generally, upon the exercise of an option, the former relationship of lessor and lessee terminates and the parties occupy the relationship of vendor and vendee. *Id*. This is true because the proper exercise of an option creates a present contract for the sale of the property. *Wendy & William Spatz Charitable Foundation v. 2263 North Lincoln Corp.*, 2013 IL App (1st) 122076, ¶ 28. In this case, however, when plaintiff exercised her option, a present contract was not formed because all of the terms of the purchase agreement had not been established. Instead, plaintiff's exercise of the option created a binding agreement to perform in the future—once the price was determined. A contract for the sale of land cannot be enforced according to an option unless and until all essential contract terms, including sale price, are certain. *Kane v. McDermott*, 191 Ill. App. 3d 212, 217 (1989). Here, the lease did not terminate until the parties' rights and obligations under the purchase agreement were fully determined. The parties had both a landlord-tenant and vendor-vendee relationship concurrently, with the lease governing the rental relationship and the option contract governing the purchasing relationship. See *Industrial Steel Construction, Inc. v. Mooncotch*, 264 Ill. App. 3d 507, 512 (1994).

¶ 18    Defendant's argument that the failure to pay rent terminated the option is derived from the

provision in the option agreement that states that plaintiff's option to buy exists until the lease is terminated. But here, the option was exercised at a point when plaintiff was undisputedly not in default under the lease and the lease was undeniably in effect. Because the option was affirmatively shown to be validly exercised and because the parties waived the six month option period, plaintiff retained a binding contract to purchase the property. At the time the option was exercised, it became a separate enforceable contract. Plaintiff's obligations as a lessee are severable. It is especially important that the parties treated both agreements as concurrently-binding and concurrently-operative for a year and a half after plaintiff exercised the option.

¶ 19 Based on the foregoing, we hold that plaintiff "exercised" her option in August 2005 when the option became executory. That act created an enforceable contract under which plaintiff agreed to buy and defendant agreed to sell the subject property. However, under these circumstances, the parties' rights and obligations under the lease were not abrogated at that time. Instead, the lease obligations continued until plaintiff became the equitable owner, and plaintiff did not become the equitable owner until all of the option contract's preconditions, including a price being set, had been fulfilled. *Id*. At that point, the purchase agreement was fully executed and the only thing left to do was to perform.

¶ 20 Although we agree with defendant that the trial court improperly made a finding of fact that defendant was the cause of the delay, fault is not determinative here. Moreover, because this issue is raised on what amounted to a cross-motion for summary judgment, defendant invited the trial court to decide it as a matter of law. *Progressive Insurance Co. v. Universal Casualty Co.,* 347 Ill. App. 3d 10, 17 (2004). The evidence was really neutral on the cause of the delay.

Neither party was unreasonable or demonstratively unwilling to go forward with the sale, and neither party followed or insisted on strictly following the appraisal procedure set forth in the option agreement. Regardless of the improper factual finding, plaintiff's right to purchase was vested and any subsequent breach of the independent lease obligations did not terminate the option. When plaintiff's right to purchase was vested, the rights given to her by the option were no longer dependent on her obligations under the lease. Instead, they were distinct agreements, each imposing its own set of rights and obligations on the parties, and the parties submitted to these concurrent obligations for a year and a half. When all of the parties' contracts are considered together along with the totality of the circumstances, we find that the cessation of rent payments did not terminate the option.

¶ 21 Because we find that both the lease and the option were concurrently valid, plaintiff was not justified to discontinue rent payments. As stated, plaintiff's obligations under the lease did not end until a binding, third-party appraisal was completed. In accordance with her concurrent obligations, plaintiff continued to pay rent for more than a year after the option period expired. Her actions were inconsistent with her current position—that when the six month option period expired she was no longer required to pay rent. Plaintiff continued to occupy the leasehold while she negotiated the sale of the property at arm's length while acting as if the lease continued to be valid. And it did. *Industrial Steel Construction*, 264 Ill. App. 3d at 512 (holding that, while appraisals under an option contract are ongoing, a lessee's obligation to pay rent continues until a final purchase price is validly set). Thus, it was not until the independent appraisal was submitted that plaintiff became the equitable owner, thereby terminating her obligations under the lease. See *id*. After the option was exercised, defendant's remedy for nonpayment of rent under the

separate, distinct lease is for damages. Accordingly, defendant is entitled to the rent due under the lease up to the completion of Schmitt's appraisal in October 2007 when plaintiff became the equitable owner.

¶ 22    In the end, the result of the transaction is what the parties contemplated at the outset. Ultimately, an uninterested third-party appraiser set the purchase price. The price ended up being almost the midpoint between the valuations the parties respectively placed on the property. Summary judgment was proper here on the issue of plaintiff's right to buy the property and on the proper purchase price because there were no genuine issues of material fact as to those matters. But, the trial court improperly found that defendant was not entitled to rent during the parties' negotiation of the purchase price. Defendant was entitled to rent under the lease until all of the conditions of his obligation to sell were determined and plaintiff became the equitable owner of the property. Therefore, plaintiff is entitled to purchase the property for $525,000, but is required to pay all rent through October 2007. On remand, the trial court shall determine the amount of rent due. The parties also dispute the award of attorney fees. That issue should also be revisited on remand.

¶ 23                                       CONCLUSION

¶ 24    Accordingly, we affirm the circuit court's judgment in part, reverse it in part, and remand for a determination of the amount due to defendant consistent with this opinion and the issue of attorney fees.

¶ 25    Affirmed in part, reversed in part, remanded.